**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                              :
In re:                        :
                              :
WILLIAM ALEXANDER,            :   Bankruptcy No. 01-62882 (KCF)
                              :
     Debtor.                  :
                              :
──────────────────────────────   :
                              :
WELLS FARGO BANK, N.A.,       :
                              :   CIVIL ACTION NO. 05-2467 (MLC)
     Appellant,               :
                              :
     v.                       :   **MEMORANDUM OPINION**
                              :
WILLIAM ALEXANDER,            :
                              :
     Appellee.                :
──────────────────────────────   :
```

**COOPER, District Judge**

Wells Fargo Bank, N.A. ("Wells Fargo") appeals from two orders of the United States Bankruptcy Court ("Bankruptcy Court"), entered on April 7, 2005, (1) granting the motion by the debtor/appellee, William Alexander ("Alexander"), to, inter alia, expunge Wells Fargo's proofs of claim ("the Expungement Order"), and (2) denying Wells Fargo's motion for relief, pursuant to Federal Rule of Civil Procedure ("Rule") 60(b) from an order entered by the Bankruptcy Court on August 11, 2004, which, inter alia, set Wells Fargo's payoff in the amount of $242,107.73 ("the Rule 60(b) Order"). (Dkt. entry no. 1; Civil Action No. 05-2468,

dkt. entry no. 1.)[1]  For the reasons stated herein, the Court will dismiss the appeals without prejudice.

<u>**BACKGROUND**</u>

I.  **Preparation of the Record on Appeal**

Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 8006 requires appellants, within ten days after filing a notice of appeal, to "file with the [Bankruptcy Court] clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented." <u>Id.</u>  Also, Bankruptcy Rule 8006 states that "[w]ithin 10 days after the service of the appellant's statement the appellee <u>may</u> file and serve on the appellant a designation of additional items to be included in the record on appeal."  <u>Id.</u> (emphasis added). In addition to the items designated by the parties and a statement of issues, Bankruptcy Rule 8006 further requires that the record contain the "notice of appeal, the judgment, order, or decree appealed from, and any opinion, findings of fact and conclusions of law of the [Bankruptcy Court]."  <u>Id.</u>  Bankruptcy Rule 8006 also directs appellants to (1) "provide to the [Bankruptcy Court] clerk a copy of the items designated," and (2)

---

[1] The Court consolidated Civil Action No. 05-2467 and Civil Action No. 05-2468 on June 6, 2005.  (Civil Action No. 05-2467, dkt. entry no. 4; Civil Action No. 05-2468, dkt. entry no. 4.)

arrange for any transcripts to be delivered to the clerk.[2]  Id.
The rule also instructs all parties to "take any other action
necessary to enable the [Bankruptcy Court] clerk to assemble and
transmit the record."  Id.

Wells Fargo, as the appellant, has failed to comply with the
requirements of Bankruptcy Rule 8006 to provide the Court with an
adequate record.  As the appellant, Wells Fargo has the burden to
provide a complete record on appeal.  See, e.g., In re CPDC Inc.,
221 F.3d 693, 698 (5th Cir. 2000) (explaining that "[t]he burden
of creating an adequate record rests with the appellant" because
"the purpose of the record designation requirement is to provide
the reviewing court with an adequate basis for evaluating the
appellant's claims on appeal").  Wells Fargo did comply with part
of Bankruptcy Rule 8006 by submitting a designation of issues
concerning each appealed order.  (Bankr. No. 01-62882, dkt. entry
nos. 69 & 70.)[3]  However, Wells Fargo failed to file with the
Clerk of the Bankruptcy Court a designation of items to be
included in the record.

---

[2] Specifically, Bankruptcy Rule 8006 requires the party to
"file with the [Bankruptcy Court] clerk a written request for the
transcript and make satisfactory arrangements for payment of its
cost."  Id.

[3] The Court notes that Wells Fargo's statements of issues
were incorrectly labeled on the Bankruptcy Court's docket as
"Designation[s] of Record on Appeal."  (See Bankr. No. 01-62882,
dkt. entry nos. 69 & 70 (Clerk's notations).)

3

After the appeals were transferred here, Wells Fargo filed a copy of the Bankruptcy Court's docket sheet with its "designation of issues". (Civil Action No. 05-2467, dkt. entry no. 2; Civil Action No. 05-2468, dkt. entry no. 2.)[4]  The mere inclusion of a copy of the docket sheet is insufficient to satisfy Bankruptcy Rule 8006.  If Wells Fargo wanted copies of the entire Bankruptcy Court docket to be included in the record, it should have filed the proper designation with the Clerk of the Bankruptcy Court and made arrangements with the Clerk for copying the desired documents.  Instead, Wells Fargo took no steps to provide the Court with a proper record.[5]  Therefore, the Court has undertaken

---

[4] The Clerk's notations on the docket reflect Wells Fargo's failure to file a designation of record.  (See, e.g., Civil Action No. 05-2467, dkt. entry no. 2.)

[5] Alexander is not entirely blameless for the lack of a designated record.  Bankruptcy Rule 8006 also permits, but does not require, Alexander — the appellee — to designate items to be included in the record on appeal.  Id.  Moreover, the rule provides that "all parties shall take any other action necessary to enable the clerk to assemble and transmit the record."  Id. (emphasis added).  Despite Wells Fargo's failure to designate any items to be included, Alexander did not file a designation, nor did he file a motion to dismiss the appeals for Wells Fargo's failure to designate items to be included in the record.
The Court notes that Alexander did include an appendix to his brief, which included almost all of the documents — regarding the two appealed orders — filed by the parties in the bankruptcy proceeding.  (Civil Action No. 05-2467, dkt. entry no. 5.) However, Bankruptcy Rules 8009 and 8010, which provide the requirements for appellate briefs, do not contemplate the inclusion of such an appendix with a brief on an appeal to a district court.  Instead, an appendix is required only when the appeal is to a bankruptcy appellate panel.  Fed.R.Bankr.P. 8009(b).

the task of reviewing the record to the furthest extent possible
by relying on the documents listed on the Bankruptcy Court's
docket sheet.

## II.  Factual and Procedural History

Alexander and two other individuals ("the mortgagors"), on
February 20, 1997, executed a note in favor of Wells Fargo in the
amount of $211,500 with a maturity date of March 1, 2027.  (Dkt.
entry no. 18, 4-17-02 J. Ackerman Certif., at ¶ 3 & Ex. A.)[6]  To
secure the note, the mortgagors provided a purchase money
mortgage to Wells Fargo on certain real property ("the
Property").  (Id.)

Alexander allegedly defaulted under the note on or about
February 1, 2000, and Wells Fargo filed a foreclosure complaint
in the New Jersey Superior Court, Middlesex County, on June 2,
2000.  (Id.)  The Superior Court, on November 16, 2000, entered a
judgment against the mortgagors in the amount of $222,195.95 with
interest "at the Contract rate of 8.0% on $207,924.43, being the
principal sum in default (including advances, if any) from
September 15, 2000 to [November 16, 2000] and lawful interest
thereafter" ("the Foreclosure Judgment").  (Id. at ¶ 6 & Ex. B.)

_____

[6]  All references to docket entries in this section, unless
otherwise noted, refer to entries on the Bankruptcy Court's
docket in Bankruptcy No. 01-62882.
    The Certification of Joel Ackerman — although claiming to
attach a copy of the note and mortgage — appears only to attach a
copy of the mortgage.

The court also awarded Wells Fargo $3,001.96 in taxed costs. (<u>Id.</u>)  On the same date, the court issued a writ of execution against the Property.  (<u>Id.</u>)[7]

Wells Fargo scheduled a Sheriff's Sale for the Property on November 14, 2001.  (<u>Id.</u> at ¶ 8.)  However, the Sheriff's Sale was postponed because Alexander filed a voluntary chapter 13 petition with the Bankruptcy Court on the morning of the Sheriff's Sale.  (Dkt. entry no. 1.)

Alexander submitted his proposed chapter 13 plan (the "Proposed Plan") on December 14, 2001.  (Dkt. entry no. 9.)  The Proposed Plan provided that he would, <u>inter alia</u>, (1) sell the Property within twelve months and pay off the amount due to Wells Fargo under the Foreclosure Judgment, and (2) make twelve monthly payments of $1,100 — the estimated amount of monthly interest accruing on the Foreclosure Judgment — to the trustee.  (Dkt. entry no. 10.)

Wells Fargo filed a proof of claim in the amount of $281,247.29, including $25,887.01 in arrears, on February 14, 2002.  (<u>See</u> Wells Fargo's Proof of Claim.)[8]  Wells Fargo moved to

---

[7] The court ordered that Wells Fargo receive $758.80 for insurance advances on November 14, 2001.  (<u>Id.</u> at ¶ 7 & Ex. C.)

[8] Wells Fargo's proof of claim did not comply with Bankruptcy Rule 3001(c), which states that
> [w]hen a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim.  If the writing has been lost or destroyed, a statement of the circumstances of the loss or

vacate the automatic stay under 11 U.S.C. § 362(d) on February 26, 2002, for Alexander's failure to make the regular monthly mortgage payments — from November 14, 2001, through February 22, 2002 — outside of the proposed plan.  (Dkt. entry nos. 12, 13, 16, and 18.)[9]  Wells Fargo asserted that Alexander owed

---

destruction shall be filed with the claim. Id.  Also, the printed form for Wells Fargo's proof of claim (Form B10) requires creditors to "[a]ttach copies of supporting documents, such as promissory notes, . . . court judgments, mortgages, [and] security agreements." (See Wells Fargo's Proof of Claim.)  Here, Wells Fargo did not attach a copy of the mortgage, the note, or the Foreclosure Judgment to its proof of claim.  Alexander or the trustee could have objected to Wells Fargo's proof of claim pursuant to the Bankruptcy Code.  See 11 U.S.C. § 502(a) (stating proof of claim, not objected to by any "party in interest" is deemed allowed); 11 U.S.C. §§ 1202(b)(1) & 704(a)(5) (permitting trustee to examine proofs of claims and object to improper claims).  However, neither Alexander nor the trustee objected to Wells Fargo's proof of claim.

The Court notes that "failure to attach writings to a proof of claim does not require a bankruptcy court to disallow a claim on that basis alone.  Rather, the claim is not entitled to be considered as prima facie evidence of the claim's validity."  In re Consol. Pioneer Mortg., 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995) (emphasis omitted); see, e.g., In re Immerfall, 216 B.R. 269, 272 (Bankr. D. Minn. 1998) (explaining that creditor's failure to provide supporting writing deprives proof of claim of evidentiary status it otherwise would have been entitled to under Bankruptcy Rule 3001(f)).

[9] Wells Fargo also objected to confirmation of the plan because "the plan is not feasible and . . . Well's [sic] Fargo['s] foreclosure judgment can not be paid through the plan." (Dkt. entry no. 42.)  Wells Fargo filed an objection to confirmation of the proposed plan on November 21, 2001, which was (1) seven days after Alexander filed his chapter 13 petition (which did not include a proposed plan), (2) before the meeting of the creditors (scheduled for December 13, 2001), and (3) before Alexander submitted a proposed plan.

$229,644.63 as of February 22, 2002.  (See Dkt. entry no. 13, 2-26-02 Detra Foote ("Foote") Certif.; Dkt. entry no. 16, 3-27-02 Foote Certif.)[10]

The Bankruptcy Court confirmed the proposed plan on August 14, 2002 (the "Original Plan").  (Unnumbered dkt. entry btw. dkt. entry nos. 21 & 22; Dkt. entry no. 22.)  The Bankruptcy Court also entered an order on September 23, 2002, resolving Wells Fargo's motion to vacate the automatic stay.  (Dkt. entry no. 24.)  The Bankruptcy Court ordered that, inter alia, (1) Alexander obtain a contract to sell the Property on or before December 1, 2002, and (2) the interest rate on the outstanding balance due to Wells Fargo accrue at 8%.  (Id.)

Wells Fargo filed a second motion to vacate the automatic stay on January 9, 2003.  (Dkt. entry no. 26.)[11]  Alexander, in response to Wells Fargo's motion, moved, pursuant to 11 U.S.C. § 1329, to amend the Original Plan on February 3, 2003.  (Dkt. entry nos. 29 & 30.)  The Bankruptcy Court, on March 11, 2003, (1) granted Alexander's motion to amend, and (2) confirmed his amended plan (the "Amended Plan").  (Unnumbered dkt. entries btw. nos. 31 & 32.)  The Amended Plan provided that Alexander would

---

[10] Wells Fargo did attach a copy of the mortgage to its certifications, but did not attach a copy of the note.  (See 2-26-02 Foote Certif.)

[11] Wells Fargo claimed that Alexander failed to obtain a contract for sale of the Property as required by the Bankruptcy Court's September 23, 2002 order.  (Id.)

(1) pay the trustee, starting April 1, 2003, $1,335 per month —
an amount constituting all arrears, including post-petition
arrears through February 2003 owed to Wells Fargo — for the
remaining forty-four months of the Amended Plan, and (2) resume
regular monthly payments directly to Wells Fargo pursuant to the
mortgage beginning with the payment due March 2003.  (Dkt. entry
nos. 32 & 33.)  The Bankruptcy Court also ordered Wells Fargo to
submit a supplemental proof of claim representing all post-
petition arrears claimed due.  (Dkt. entry no. 33.)

      The Bankruptcy Court resolved Wells Fargo's second motion to
vacate the automatic stay in an order entered on May 19, 2003,
which (1) added $25,887.01 — the amount of arrears listed in
Wells Fargo's proof of claim — to the "Affidavit As To Amount of
Arrears Due," previously filed by Wells Fargo, (2) required
Alexander to make regular monthly mortgage payments, outside of
the Amended Plan, beginning in April 2003, directly to Wells
Fargo, and (3) permitted Wells Fargo, if Alexander failed to make
a monthly mortgage payment within thirty days of the date payment
is due, to obtain an order vacating the automatic stay.  (Dkt.
entry no. 37.)[12]

---

      [12] The Bankruptcy Court had previously held a hearing on
March 26, 2003 concerning this motion and requested that the
parties submit a proposed written order.  (Unnumbered dkt. entry
btw. nos. 35 & 36.)
      The Court did not find in the record the document described
by the Bankruptcy Court as Wells Fargo's "Affidavit As To Amount
of Arrears Due."  Other than Wells Fargo's proof of claim, the

Wells Fargo requested — for the third time — that the
Bankruptcy Court vacate the automatic stay on March 11, 2004.
(Dkt. entry no. 39, 3-11-04 Chambers Certif.)  Wells Fargo, as
required by the Bankruptcy Court's May 19, 2003 order, submitted
a certification indicating that Alexander "failed to remit the
regular monthly mortgage payment in the amount of $2,298.54 per
month, for the months of January through March 2004."  (Id.)  As
such, Alexander owed $7,050.82, which included late charges in
the amount of $77.60 per month for January and February 2004.
(Id.)[13]  The Bankruptcy Court vacated the automatic stay on March
19, 2004.  (Dkt. entry no. 40.)  Wells Fargo scheduled a
Sheriff's Sale of the Property for June 23, 2004.  (Dkt. entry
no. 44, 7-01-04 Alexander Certif., at ¶ 7.)  The New Jersey
Superior Court, on June 22, 2004, adjourned the Sheriff's Sale to
July 23, 2004, to allow Alexander to complete mortgage
refinancing.  (Id. at ¶ 8.)

Alexander filed a motion with the Bankruptcy Court on July
1, 2004, to reinstate the automatic stay with respect to Wells
Fargo and the Property, thus allowing him to complete mortgage

---

Court found only two documents — submitted by Wells Fargo —
describing an amount of arrears due.  (See 2-26-02 Foote Certif.
(claiming Wells Fargo owed $7,535.79 for three delinquent monthly
payments — from December 2001 to February 2002 — and accompanying
late fees); 3-27-02 Foote Certif. (stating same).)

[13] Alexander admits to falling behind on his mortgage
payments to Wells Fargo.  (7-01-04 Alexander Certif., at ¶ 4.)

refinancing of the Property in an amount sufficient to complete the Amended Plan and fix the payoff due to Wells Fargo.  (Dkt. entry no. 44.)  On that same date, Alexander applied to shorten the time for the hearing on his motion, pursuant to Bankruptcy Rule 9006(c)(1), claiming that he had to complete refinancing at least three days before the Sheriff's Sale.  (Dkt. entry no. 45.) The Bankruptcy Court, on July 2, 2004, granted the motion to shorten time and set the hearing on the motion to reinstate the stay and fix the payoff to Wells Fargo for July 14, 2004.  (Dkt. entry no. 46.)

The Bankruptcy Court, on July 14, 2004, scheduled further submissions by the parties regarding the motion to reinstate the automatic stay and fix the payoff due to Wells Fargo.  (Dkt. entry no. 47.)[14]  The Bankruptcy Court ordered Wells Fargo to "file and serve a certification, affidavit, or brief setting forth its response or opposition to the motion no later than July 23, 2004."  (Id.)  The order provided further that (1) "PARTIES THAT DO NOT FILE TIMELY PAPERS IN ACCORDANCE WITH THIS ORDER WILL NOT BE PERMITTED TO PRESENT ORAL ARGUMENT," and (2) "[c]ourt appearances will be required to prosecute the motion/objection and any responses."  (Id.)

---

[14] The Bankruptcy Court apparently issued this order with the consent of the parties, who had also agreed to temporarily reinstate the stay and adjourn the motion to allow Wells Fargo to make a submission on or before July 23, 2004.  (Dkt. entry no. 56, 2-01-05 J. Ackerman Certif., at ¶ 7; Dkt. entry no. 58, 3-02-05 Gillman Certif., at ¶ 13 & Ex. B.)

Alexander's attorney, Justin M. Gillman ("Gillman"), submitted a certification on July 26, 2004, requesting that the Bankruptcy Court fix Wells Fargo's payoff in the amount of $242,107.73. (Dkt. entry no. 49.) The law office of Zucker, Goldberg & Ackerman (the "Zucker Firm"), attorneys for Wells Fargo, contacted Gillman on July 29, 2004, to (1) inform him that Wells Fargo's counsel was in the hospital, and (2) request that he consent to an adjournment. (2-01-05 J. Ackerman Certif., at ¶ 8; 3-02-05 Gillman Certif., at ¶ 14.) Gillman did not consent to the adjournment, and the Zucker Firm failed to file any submissions regarding the motion or otherwise appear at the hearing before the Bankruptcy Court on August 4, 2004. (3-02-05 Gillman Certif., at ¶¶ 14, 15.) The Bankruptcy Court granted the motion on August 4, 2004, and entered an order on August 11, 2004, (1) allowing Alexander to complete mortgage refinancing, (2) fixing Wells Fargo's payoff at $242,107.73, to be paid at the time of closing, (3) requiring Wells Fargo, after receiving its payoff, to provide Alexander with a mortgage and lis pendens endorsed for cancellation, (4) requiring Alexander to forward the balance of the sale proceeds to the trustee (less any payments to Wells Fargo) to complete the Amended Plan, (5) vacating the March 19, 2004 order vacating the automatic stay as to Wells Fargo, and (6) reinstating the automatic stay as to Wells Fargo. (Dkt. entry no. 50.)

12

The Zucker Firm contacted Gillman on August 11, 2004, and August 18, 2004, concerning the status of the payoff and the sale. (2-01-05 J. Ackerman Certif., at ¶ 9; 3-02-05 Gillman Certif., at ¶ 15.) Gillman informed the Zucker Firm that he sent a copy of the August 11, 2004 order and other information to the mortgage company, and that he "would expect a closing to be completed in the very near future." (2-01-05 J. Ackerman Certif., at ¶ 7 & Ex. F; 3-02-05 Gillman Certif., at ¶ 15.)[15]

Alexander could not complete financing with the original mortgage company, Crystal Mortgage Corporation ("Crystal Mortgage"), but he eventually obtained new refinancing and a new mortgage commitment with Emigrant Mortgage Company, Inc. (1-7-05 Gillman Certif., at ¶ 7 & Ex. B; 3-2-05 Gillman Certif., at ¶ 17.) Alexander's title company, Professional Title, which was closing on Alexander's behalf, obtained funds of $275,000 on or about December 31, 2004. (1-7-05 Gillman Certif., at ¶ 7 & Ex. B.)

Gillman, on January 3, 2005, stating that the attorneys for Wells Fargo refused to accept the $242,107.73 payoff, requested that Professional Title send him a check in the amount of $263,398.41 to be held in his office trust account pending resolution of the matter with Wells Fargo. (Id. at ¶¶ 8-9 & Ex.

---

[15] The Zucker Firm also alleges that they sent e-mails to Gillman on September 2, 2004, and September 8, 2004, asking for a closing date, but received no response from Gillman. (2-01-05 J. Ackerman Certif., at ¶ 10.)

13

C.)  After Gillman received the funds, he sent an office trust check — in the amount of $242,107.73, payable to Wells Fargo — to the Zucker Firm.  (Id. at ¶ 10 & Ex. E; Dkt. entry no. 59, 3-17-05 J. Ackerman Certif., at ¶ 12.)  The Zucker Firm received the check on or about January 11, 2005, but refused to accept the check because it was allegedly insufficient to satisfy the full payoff amount.  (3-17-05 J. Ackerman Certif., at ¶ 12.)

Alexander moved to expunge Wells Fargo's proof of claim on January 7, 2005, claiming that he satisfied the Bankruptcy Court's August 11, 2004 order by sending the appropriate payoff amount to Wells Fargo.  (Dkt. entry no. 52.)  Wells Fargo opposed the motion, arguing that the check for $242,107.73 was not the full amount due to Wells Fargo because it did not include interest and advances.  (Dkt. entry no. 53, 1-28-05 J. Ackerman Certif., at ¶ 6.)

Wells Fargo, on February 1, 2005, moved, pursuant to Rule 60(b), for relief from the August 11, 2004 order.  (Dkt. entry nos. 56-57).[16]  The Bankruptcy Court — after a hearing on April 6, 2005 — rendered an oral decision (1) granting the motion to expunge Wells Fargo's proof of claim, and (2) denying the Rule 60(b) motion.  (Unnumbered dkt. entry btw. nos. 60 & 61.)[17]

---

[16] Although Wells Fargo's arguments in support of the Rule 60(b) motion are not clear from its submissions, it apparently claimed that (1) it was entitled to a higher payoff amount, and (2) its failure to attend the hearing on August 4, 2004, was the result of excusable neglect.

[17] The Bankruptcy Court entered formal written orders on April 7, 2005.  (Dkt. entry nos. 61 & 62.)

Wells Fargo filed timely notices of appeal from both orders on
April 14, 2005.  (Dkt. entry nos. 65 & 66.)

<u>**DISCUSSION**</u>

**I.   Jurisdiction and Standard of Review**

A district court has appellate jurisdiction over a
bankruptcy court's final judgments, orders, and decrees.  28
U.S.C. § 158(a).  A district court reviews a bankruptcy court's
"legal determination de novo, its factual findings for clear
error[,] and its exercise of discretion for an abuse thereof."
<u>In re Rashid</u>, 210 F.3d 201, 205 (3d Cir. 2000); <u>see</u>
Fed.R.Bankr.P. 8013 ("On appeal the district court . . . may
affirm, modify, or reverse a bankruptcy judge's judgment, order,
or decree or remand with instructions for further proceedings.
Findings of fact, whether based on oral or documentary evidence,
shall not be set aside unless clearly erroneous.")  Also, the
Court, when addressing mixed questions of law and fact, divides
the questions into their respective components and applies the
appropriate standard to each.   <u>In re Brown</u>, 951 F.2d 564, 567 (3d
Cir. 1991).

**II.  Analysis**

    **A.   The Rule 60(b) Order**

Wells Fargo contends that the Bankruptcy Court erred in
denying its Rule 60(b) motion because the court (1) "refus[ed] to
acknowledge the new evidence submitted that the order setting the
payoff as of [August 11, 2004] was stale and no interest or

15

advances were recoverable despite a six month delay in closing the transaction," (2) "refus[ed] to acknowledge the admission against interest in [Alexander]'s pleadings indicating [he] must pay interest on the amount set as the payoff in [the] [August 11, 2004] order until the time the transaction closed," and (3) summarily concluded "that there was no excusable neglect under this order due to the fact creditor's counsel was in the hospital."  (Wells Fargo's Br., at 7.)  Alexander claims that the Bankruptcy Court properly denied the motion because Wells Fargo failed to demonstrate excusable neglect.  (Alexander's Br., at 5.)[18]

Rule 60(b) allows a party to seek relief from a final judgment or order for "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . .; (4) the judgment is void; (5) . . . it is no longer equitable that the judgement should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."[19]  Id.  A party seeking relief under Rule 60(b) must move "within a reasonable time, and for reasons (1), (2),

---

[18] Alexander also notes that Wells Fargo failed to present any argument in its brief regarding excusable neglect. (Alexander's Br., at 5.)

[19] Bankruptcy Rule 9024 provides that Rule 60 applies in cases under the Bankruptcy Code seeking relief from a judgment or order, except in limited circumstances, none of which apply here. Id.

and (3) [above] not more than one year after the judgment, order, or proceeding was entered or taken." Id.  The Court, in considering an appeal from the denial of a Rule 60(b) motion, reviews only the denial of the motion, not the merits of the underlying judgment. Erie v. County of Crawford, No. 05-3010, 2006 WL 83400, at *1 (3d Cir. Jan. 13, 2006); see Browder v. Dir., Dep't of Corr., 434 U.S. 257, 263 n.7 (1978) (explaining that "an appeal from denial of Rule 60(b) relief does not bring up the underlying judgment for review").  A bankruptcy court's decision to grant or deny a Rule 60(b) motion may be reversed only for an abuse of discretion. Page v. Schweiker, 786 F.2d 150, 152 (3d Cir. 1986).

Although Wells Fargo identifies three alleged errors by the Bankruptcy Court, it failed to include any reference to two of the issues — (1) the "new evidence" allegedly rejected by the Bankruptcy Court, and (2) excusable neglect — in the argument section of its brief.[20]  Bankruptcy Rule 8010(a)(1)(E) —

---

[20] Wells Fargo's brief also lacks a statement of facts. Bankruptcy Rule 8010(a)(1)(D) provides that an appellant's brief must contain, a "statement of the case," including (1) "the nature of the case, the course of the proceedings, and the disposition in the court below," and (2) "a statement of the facts relevant to the issues presented for review, with appropriate references to the record." Id.  Wells Fargo asserts that the Bankruptcy Court erred by (1) not finding excusable neglect because its counsel was in the hospital, (2) failing to admit alleged new evidence, and (3) failing to acknowledge an "admission against interest in [Alexander's] pleadings."  Despite these assertions, Wells Fargo's brief lacks (1) any reference to

establishing the requirements for the argument section of a brief
— states that "[t]he argument may be preceded by a summary," and
"shall contain the contentions of the appellant with respect to
the issues presented, and the reasons therefor, with citations to
the authorities, statutes and parts of the record relied on."
Id.  "[A] district court may, in its discretion, deem an argument
waived if it is not presented in accordance with Rule 8010."  In
re Trans World Airlines, 145 F.3d 124, 132 (3d Cir. 1998); see
also United States v. Voigt, 89 F.3d 1050, 1064 n.4 (3d Cir.
1996) (stating that "briefs must contain statements of all issues
presented for appeal, together with supporting arguments");
Sanchez v. Miller, 792 F.2d 694, 703 (7th Cir. 1986) (explaining
that "[t]he court is not obligated to research and construct [a
party's] legal arguments, especially since it is represented by
counsel").  Wells Fargo makes no argument whatsoever in its brief
concerning the alleged errors for failing to acknowledge new
evidence and makes only a passing reference to the issue of
"excusable neglect" in its "Preliminary Statement."  See Reynolds
v. Wagner, 128 F.3d 166, 178 (3d Cir. 1997) ("[A]n argument
consisting of no more than a conclusory assertion . . . will be
deemed waived."); Commonwealth of Pa. v. U.S. Dep't of Health &

---

the record indicating that its counsel was in the hospital, (2) a
description of the "new evidence" that the Bankruptcy Court
failed to admit, or (3) the alleged "admission against interest"
in Alexander's pleadings.

Human Servs., 101 F.3d 939, 945 (3d Cir. 1996) (explaining that arguments mentioned in passing but not directly argued will be deemed waived).  The Court finds that Wells Fargo's failure to include these issues in its argument constitutes a waiver of these specific issues on appeal.

Wells Fargo also asserts that the Bankruptcy Court failed to acknowledge an "admission against interest in [Alexander]'s pleadings indicating [he] must pay interest on the amount set as the payoff in [the] [August 11, 2004] order until the time the transaction closed."  Concerning this allegation of error, Wells Fargo has failed to (1) identify the "admission against interest," or (2) brief this particular issue.  However, Wells Fargo's brief does claim that the Bankruptcy Court erred in "holding that interest . . . [was] not recoverable on [its] claim from August 7, 2004 to the date the payoff funds were received." (Wells Fargo's Br., at 4.)  Also, the brief does contain arguments including, inter alia, (1) interest on a judgment is mandatory under New Jersey law, and (2) Wells Fargo is entitled to interest at the contract rate.  (Id. at 12-19, 41-42.)[21] Therefore, the Court finds that the issue of an award of interest

---

[21] The Court notes that Wells Fargo provides no citations to the record for factual support of the legal arguments in its brief.  See Fed.R.Bankr.P. 8010(a)(1)(E) (requiring argument section of appellant's brief to cite to "parts of the record relied on").

(the "interest issue") may be inferred from Wells Fargo's designated issue concerning Alexander's alleged admission against interest.

Wells Fargo, however, has not provided the Court with any record of it arguing the interest issue before the Bankruptcy Court.  In fact, none of the certifications and other documents submitted by Wells Fargo to the Bankruptcy Court in support of its Rule 60(b) motion or in opposition to the motion to expunge include an argument that it was entitled to interest from August 7, 2004 to January 11, 2005.  The Rule 60(b) Order does not reference the interest issue.  Nonetheless, the Court notes that both parties' briefs allude to the Bankruptcy Court hearing on April 6, 2005.  (See Alexander's Br., at 7 ("The [Bankruptcy Court] denied Wells Fargo's Motion based on its failure to file any responsive pleadings prior to the second hearing date for the Debtor's Motion and failure to appear at the time of the hearing."); Wells Fargo's Br., at 7 (claiming Bankruptcy Court refused to acknowledge admission against interest).)  However, Wells Fargo, in disregarding its responsibility under the Bankruptcy Rules to provide the Court with an adequate record, also failed to include a transcript of the proceedings before the Bankruptcy Court on April 6, 2005.

Bankruptcy Rule 8006 explicitly states that an appellate party must make arrangements for payment of the costs of a

20

transcript.  Id.  Bankruptcy Rule 8001(a) provides the Court with the discretion to dismiss a bankruptcy appeal for an appellant's failure to take a step necessary to perfect the appeal, which includes failing to file a relevant transcript.  Id.  However, "dismissal of a bankruptcy appeal for failure to comply with a . . . procedural rule is a harsh sanction to be imposed rarely." In re SB Props., 185 B.R. 198, 201 (E.D. Pa. 1995); see In re Comer, 716 F.2d 168, 177 (3d Cir. 1983) ("Not every failure to follow procedural rules mandates dismissal of the appeal.").  The Rule 60(b) Order does not disclose the factual or legal basis of the Bankruptcy Judge's decision.  Thus, the Court cannot conduct a meaningful review of this issue without reviewing the transcript of the April 6, 2005 hearing.  Accordingly, the Court will dismiss Wells Fargo's appeal from the Rule 60(b) Order without prejudice to reinstate the appeal after providing the Court with a transcript of the April 6, 2005 hearing.[22]

## B.  The Expungement Order

Wells Fargo claims that the Bankruptcy Court erred in expunging its proof of claim when the payoff used to satisfy the

---

[22] The Court notes that, if upon a more thorough review of the record, Wells Fargo did not argue the interest issue before the Bankruptcy Court, it cannot raise it here.  See, e.g., Brenner v. Local 514, United Bhd. of Carpenters, 927 F.2d 1283, 1298 (3d Cir. 1991) (failure to raise issue in district court constitutes a waiver of the argument on appeal).  Also, although the Court does not address Wells Fargo's contention of unjust enrichment, the above recommendation applies to that issue as well.

mortgage was over six months old.  Wells Fargo contends that it was entitled to (1) interest on the judgment running from August 11, 2004, to January 11, 2005, and (2) reimbursement for advances made on Alexander's behalf after the judgment.  Similar to the Rule 60(b) Order, the Expungement Order does not disclose the factual or legal basis for the Bankruptcy Judge's decision.  Therefore, the Court — in light of Wells Fargo's failure to provide the Court with a transcript of the April 6, 2005 hearing — will also dismiss the appeal from the Expungement Order without prejudice.

**CONCLUSION**

The Court, for the reasons stated <u>supra</u>, concludes that Wells Fargo has failed to provide the Court with an appropriate record to allow the Court to conduct an informed, substantive appellate review.  The Court further finds that dismissals with prejudice would be a harsh sanction, and thus dismisses Wells Fargo's appeals from the Rule 60(b) Order and Expungement Order without prejudice to reinstate once a proper record is provided to the Court.  The Court will issue an appropriate order.

        s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge